**2023 IL 128275**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128275)

SANDRA HART *et al.*, Appellees, v. THE ILLINOIS STATE POLICE, Appellant.

*Opinion filed November 30, 2023.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1     The plaintiffs, Sandra Hart [1] and Kenneth L. Burgess Sr., filed separate complaints in the circuit court of Madison County, alleging that the defendant, the Illinois State Police (ISP), violated the Freedom of Information Act (FOIA) (5 ILCS

---

[1]As the appellate court below noted, Sandra Hart has passed away. 2022 IL App (5th) 190258, ¶¶ 11-12. Before this court, the Illinois State Police does not contend that Hart's passing affects our disposition of this appeal.

140/1 *et seq.* (West 2018)) by failing to provide them with documents relating to their Firearm Owners' Identification (FOID) cards under the Firearm Owner's Identification Card Act (430 ILCS 65/0.01 *et seq.* (West 2018)). ISP had previously denied the plaintiffs' requests for the documents, finding the requested information exempt from disclosure under section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2018)). The circuit court agreed with the plaintiffs and ordered ISP to produce each plaintiff's FOID card application and to produce copies of letters it had previously sent to the plaintiffs in which it informed them it was revoking their FOID cards. After consolidating the cases, the appellate court affirmed the ruling of the circuit court of Madison County. 2022 IL App (5th) 190258.

¶ 2     We granted ISP's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Oct. 1, 2021)). For the following reasons, we reverse the judgments of the appellate court and circuit court.

¶ 3                               BACKGROUND

¶ 4     On August 31, 2018, Hart made a written request, through counsel, to ISP pursuant to FOIA for "any and all documents related to Ms. Hart's FOID card, any and all applications for same, and any and all documentations related to any legal disabilities that have or may cause her to be ineligible for a FOID card."[2] On May 6, 2020, Burgess made a similar written request to ISP pursuant to FOIA for "my file related to my Firearm Owners Identification Card application, as well as specifically, any and all letters to me concerning the denial of my application and the reasons therefore."[3]

¶ 5     ISP denied both requests, quoting section 7.5(v) of FOIA (5 ILCS 140/7.5(v) (West 2018)) as the basis for the denials. This provision, which exempts certain information regarding FOID card holders from disclosure under FOIA, states the following shall be exempt from inspection and copying:

---

[2]A secured exhibit in the record shows that ISP sent Hart a letter notifying her of the revocation of her FOID card on May 10, 2010.

[3]Although Burgess's FOIA request sought a copy of ISP's letter denying his application, Burgess has subsequently made clear that the letter at issue notified Burgess of the revocation of his FOID card.

- 2 -

"Names and information of people who have applied for or received Firearm Owner's Identification Cards under the Firearm Owners Identification Card Act or applied for or received a concealed carry license under the Firearm Concealed Carry Act, unless otherwise authorized by the Firearm Concealed Carry Act; and databases under the Firearm Concealed Carry Act, records of the Concealed Carry Licensing Review Board under the Firearm Concealed Carry Act, and law enforcement agency objections under the Firearm Concealed Carry Act." *Id.*

¶ 6        On September 14, 2018, Hart filed a complaint against ISP in the circuit court of Madison County. On June 23, 2020, Burgess also filed a complaint in the circuit court of Madison County. Both complaints were filed pursuant to FOIA, and both asked the court to compel ISP to produce the requested documents.

¶ 7        In the Hart case, ISP filed a motion to dismiss on November 29, 2018. On December 10, 2018, Hart filed a response to that motion along with a cross-motion for summary judgment. On February 22, 2019, the court heard arguments on ISP's motion to dismiss.[4] On April 12, 2019, the circuit court entered an order stating the case was taken under advisement. The court also directed ISP to file the documents responsive to Hart's request under seal within 14 days. Thereafter, ISP complied with this order.

¶ 8        On May 24, 2019, the trial court entered an order denying ISP's motion to dismiss and granting Hart's motion for summary judgment. The court stated: "A narrow reading of the specific language that the legislature utilized in drafting [section] 7.5(v) strongly suggests that it does not encompass for purposes of the exemption a FOID application that is requested by the applicant herself, nor communications authored by the ISP and previously served on the requesting applicant." Specifically, the "legislature employed the words 'names' and 'people' in plural forms. This would suggest that the legislature addressed the possibility that absent such an exemption, the names of applicants and their personal information could be widely misused." The trial court further found that, reading the statute as a whole, "it is neither clear nor convincing that a narrow reading of the entirety of the [section] 7.5(v) exception would justify the ISP in denying production to the plaintiff her application and the ISP's response to her application.

_____

[4]There is no report of proceedings contained in the record for the Hart case.

Common sense compels the same result." According to the court, "what the legislature intended was to prevent dissemination to or by third parties of the names and personal information of FOID applicants, and not the release of an applicant's application or the ISP's denial of the applicant's application. A contrary interpretation would create an absurd result." Based on this conclusion, the trial court ordered ISP to produce Hart's application for a FOID card and a copy of the letter previously sent by ISP in which it notified Hart that it was revoking her FOID card.

¶ 9        ISP filed a notice of appeal, which was stayed pending Hart's motion for fees and costs. On March 5, 2020, the trial court entered judgment in favor of Hart and awarded her fees and costs. This order also indicated that the court's order of May 24, 2019, remained in effect but was stayed pending the completion of the appeal process.

¶ 10        In the second case, Burgess filed a motion for summary judgment on July 30, 2020. Attached to this motion was the trial court's May 24, 2019, order from the Hart case. Burgess argued summary judgment should be granted in his favor for the reasons explained in that order. ISP filed a cross-motion for summary judgment as well as an amended cross-motion for summary judgment, which argued the documents were exempt from disclosure under section 7.5(v). In addition, ISP argued that it was bound to follow a permanent injunction that had been issued by the Peoria County circuit court in *Illinois State Rifle Ass'n v. Department of State Police of Illinois*, No. 11-CH-151 (Cir. Ct. Peoria County, Dec. 5, 2011).[5]

---

[5]In December 2011, the circuit court of Peoria County, in *Illinois State Rifle Ass'n*, No 11-CH-151, issued a permanent injunction prohibiting ISP from disclosing FOID card information. The order states:

"6. The Freedom of Information Act (5 ILCS 140/1 *et seq.*), and as amended, exempts certain information from disclosure, inspection, or copying. Pursuant to [FOIA], the State Police, its officers, employees, and agents, shall be prohibited from releasing, in response to a request made under [FOIA], any personally identifying information—as defined *infra* ¶ 7—containing any of the following:
a. Records identifying, directly or indirectly, any person who has applied for a FOID card, who has been issued or denied a FOID card, or whose FOID card has expired or been revoked[.]
* * *
7. As used in this Order, the term 'personally identifying information' means information submitted to the State Police related to a FOID card application or the FTIP program that identifies or describes a person, including but not limited to an individual's name, street address,

¶ 11 After a hearing on October 23, 2020, the trial court granted summary judgment in Burgess's favor "[f]or the reasons set forth in Judge Dugan's order in Hart v. ISP." The court did not address the permanent injunction. ISP's cross-motion for summary judgment was denied, and it was ordered to produce Burgess's FOID card application and a copy of the letter revoking his FOID card within 30 days. Thereafter, the court entered judgment in favor of Burgess for costs and fees but granted ISP's motion to stay production of the documents and judgment on the costs and fees pending appeal. On December 18, 2020, ISP filed a notice of appeal.

¶ 12 The appellate court consolidated the two cases and affirmed the trial court's ruling. 2022 IL App (5th) 190258. The appellate court agreed with the trial court that the legislature's use of the plural terms "names" and "people," rather than the singular terms "name" and "person" (*id.* ¶ 21), meant the exemption set forth in section 7.5(v) does not apply to a request for one's own FOID card information (*id.* ¶ 22). According to the appellate court, the term "people," by its plain meaning, necessitates more than a single individual. *Id.* To interpret section 7.5(v) as applying to a request for one's own information, the court concluded, would render the term "people" meaningless. *Id.*

¶ 13 The appellate court then interpreted section 7.5(v) in light of section 7(1)(c) of FOIA, which allows a person to consent to disclosure of " 'personal information contained within public records.' " *Id.* ¶ 24 (quoting 5 ILCS 140/7(1)(c) (West 2018)). The appellate court noted that, although section 7.5(v) prohibits the release of personal information of individuals who have applied for or received a FOID card, section 7(1)(c) indicates that an individual can consent in writing to release of his or her own personal information. *Id.* ¶ 25. Here, the plaintiffs requested their own information and consented in writing. *Id.* Thus, the appellate court found that, "when interpreting section 7.5(v) in light of section 7(1)(c)," the "plaintiffs' applications and denial letters were not prohibited from disclosure where the plaintiffs consented to the release of their own information." *Id.* The appellate court noted that the plaintiffs were simply "seeking another copy of their own information" and not the names and information of other people. *Id.* ¶ 28. The court

telephone number, electronic mail address, date of birth, physical description, photograph, medical or mental health information, Social Security number, driver's license number, state identification number, FOID card number, or other similarly unique identifying information." *Id.* at 2-3.

concluded "that interpreting section 7.5(v) to prohibit the release of the plaintiffs' own applications and denial letters would create an absurd result." *Id.*

¶ 14 The appellate court then rejected ISP's argument that there is no way for it to verify that the FOIA requester is, in fact, the person whose information is being sought, finding it "unpersuasive as the individual's written FOIA request, by necessity to identify the application and denial letter sought, should provide ISP with sufficient information to demonstrate that the requester was seeking his/her own information." *Id.* ¶ 29. According to the appellate court, if the request is insufficient, additional verifying information could be required before release of the information. *Id.*

¶ 15 Finally, the appellate court found the permanent injunction issued by the Peoria County circuit court to be of no moment. *Id.* ¶ 31. The appellate court noted that the permanent injunction was issued pursuant to FOIA and, as the appellate court had concluded, FOIA does not prohibit the release of the plaintiffs' own applications and revocation or denial letters. *Id.* This appeal followed.

¶ 16                                     ANALYSIS

¶ 17 At issue here is whether the appellate court erred in holding that the FOID documents requested by plaintiffs were not exempt from disclosure under section 7.5(v) of FOIA. This is a question of statutory construction that we review *de novo*. *People v. Washington*, 2023 IL 127952, ¶ 27. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Id.* The language of the statute is the most reliable indicator of the legislature's intent, and the language should be given its plain and ordinary meaning. *Cleeton v. SIU Healthcare, Inc.*, 2023 IL 128651, ¶ 28. In conducting our review, we keep in mind that under FOIA public records are presumed to be open and accessible. 5 ILCS 140/1.2 (West 2018). A public body must comply with a proper request for information unless one of the statutory exemptions in section 7 (*id.* § 7) applies. *Chapman v. Chicago Department of Finance*, 2023 IL 128300, ¶ 32. The public body claiming the exemption must prove by clear and convincing evidence that the requested information is exempt. 5 ILCS 140/1.2 (West 2018).

¶ 18    Section 7.5(v) provides that the following information is exempt from disclosure under FOIA:

"Names and information of people who have applied for or received Firearm Owner's Identification Cards under the Firearm Owners Identification Card Act or applied for or received a concealed carry license under the Firearm Concealed Carry Act, unless otherwise authorized by the Firearm Concealed Carry Act; and databases under the Firearm Concealed Carry Act, records of the Concealed Carry Licensing Review Board under the Fire Concealed Carry Act, and law enforcement agency objections under the Firearm Concealed Carry Act." *Id.* § 7.5(v).

¶ 19    ISP contends the appellate court erred in its interpretation of section 7.5(v). According to ISP, section 7.5(v) is a blanket exemption prohibiting the disclosure of all FOID card information under FOIA, and there is no exception for individuals who are seeking their own information. We agree.

¶ 20    Section 7.5(v) states that the "names and information" of people who have applied for or received FOID cards are exempt from disclosure under FOIA. The term "information" necessarily includes, in addition to their names, unique personal details of the applicants, such as addresses, phone numbers, and other data, much of which would appear in a FOID card application and in any letter sent by ISP denying an application or revoking a FOID card. While explicitly exempting "names and information" of people who have applied for or received FOID cards, section 7.5(v) makes no distinction between another person's FOID card information and one's own FOID card information. We may not read words into a statute that are not there. *People v. Burge*, 2021 IL 125642, ¶ 20 ("courts may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express"). However, this is precisely what the appellate court did in this case. In effect, the appellate court read section 7.5(v) as exempting the "Names and information of people who have applied for or received Firearm Owner's Identification Cards *unless the individual is requesting his or her own information*." The appellate court erred in doing so.

¶ 21    In support of its interpretation of section 7.5(v), the appellate court emphasized that the statute uses the plural terms "names" and "people" and, therefore, must not exempt from disclosure an individual's request for his or her own information.

However, section 1.03 of the Statute on Statutes provides that "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." 5 ILCS 70/1.03 (West 2018). This is a well-settled principle of statutory construction. See *Jeneary v. Chicago & Interurban Traction Co.*, 306 Ill. 392, 396 (1923) ("It is a well recognized tenet of statutory and ordinance construction that words used in the plural shall include the singular ***."). Accordingly, contrary to the appellate court's reasoning, the legislature's use of the plural terms "names" and "people" does not, in itself, mean that a request for one's own information is excluded from section 7.5(v).

¶ 22        Moreover, in addition to FOID card information, section 7.5(v) also states that information regarding concealed carry license holders and applicants shall not be disclosed "unless authorized by the Firearm Concealed Carry Act." 5 ILCS 140/7.5(v) (West 2018). At oral argument, ISP pointed out (and plaintiffs conceded) that the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2018)) specifically allows for the release of one's own denial and revocation information pertaining to concealed carry licenses. If the legislature had similarly intended for information regarding an individual's FOID card to be subject to disclosure under FOIA, it would have said so. It did not.

¶ 23        Further, we disagree with the appellate court's conclusion that an individual may consent to disclosure of his or her FOID card information under section 7(1)(c) of FOIA. That provision prohibits the disclosure of

> "[p]ersonal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, *unless the disclosure is consented to in writing by the individual subjects of the information*. 'Unwarranted invasion of personal privacy' means the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." (Emphasis added.) 5 ILCS 140/7(1)(c) (West 2018).

¶ 24        As ISP notes, an individual's application for a FOID card and a subsequent denial or revocation letter from ISP are not properly characterized as "public records" within the meaning of section 7(1)(c). In addition, the information

contained in a FOID card application clearly falls under section 2(c-5) and section 7(1)(b) of FOIA (*id.* §§ 2(c-5), 7(1)(b)). Section 2(c-5) defines "Private information" as

> "unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses. Private information also includes home address and personal license plates, except as otherwise provided by law or when compiled without possibility of attribution to any person." *Id.* § 2(c-5).

Section 7(1)(b), in turn, states that "[p]rivate information" is exempt from disclosure "unless disclosure is required by another provision of this Act, a State or federal law, or a court order." *Id.* § 7(1)(b). Here, there is no dispute that no state or federal law or court order requires the disclosure of FOID card information. Accordingly, we conclude the appellate court erred in holding that an individual may consent to disclosure of his or her FOID card information under FOIA.

¶ 25   Finally, we note that, while the plaintiffs are not entitled to the disclosure of their requested information under FOIA, they may obtain their FOID card applications and revocation letters through the Firearms Services Bureau, the division of ISP that processes FOID card applications and determines FOID card eligibility. See, *e.g.*, *Brown v. Illinois State Police*, 2021 IL 126153, ¶ 20. ISP does not dispute this point but simply maintains, as we have found, that FOIA is not the proper means for obtaining the requested information.

¶ 26                                CONCLUSION

¶ 27   For the foregoing reasons, we conclude that the appellate and trial courts erred in interpreting section 7.5(v) as allowing for disclosure of one's own FOID application and denial or revocation letters. Accordingly, we reverse the judgments of the lower courts. The cases are remanded to the trial court for further proceedings consistent with this opinion.

¶ 28   Judgments reversed.

¶ 29   Cause remanded.