2024 IL App (1st) 231784

FIFTH DIVISION
March 4, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-23-1784

| | | |
|---|---|---|
| *In re* PARENTAGE OF D.F. and J.F., Minors, | ) | Appeal from the |
| | ) | Circuit Court of |
| (Leslie Ward, | ) | Cook County. |
| | ) | |
|    Petitioner-Appellant, | ) | |
| | ) | No. 22 D 079326 |
| v. | ) | |
| | ) | |
| Jennifer Froelich, | ) | Honorable |
| | ) | Patrick Powers, |
|    Respondent-Appellee). | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Lyle and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner Leslie Ward and respondent Jennifer Froelich were in a long-term romantic relationship during which Jennifer gave birth through artificial insemination to the minor children, D.F. and J.F. After the relationship ended, Jennifer no longer permitted Leslie to see the children. Leslie filed a petition, asking the court to enter an order finding she was a parent of D.F. and J.F. and giving her reasonable parenting time. Jennifer filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2022)), arguing Leslie lacked standing to bring the petition. The circuit court agreed and dismissed Leslie's

petition. Leslie has appealed and, for the following reasons, we reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    On March 17, 2022, Leslie filed a "Petition to Adjudicate Parentage, For Entry of Allocation of Parenting Time Order, Appointment of Guardian *Ad Litem*, Related Matters, and Other Relief." According to Leslie, she and Jennifer were in a committed relationship during which they had two children through artificial insemination. Although Jennifer gave birth to both children, Leslie and Jennifer both "parented the children and had committed to and did share all responsibilities of parenthood." Shortly after their relationship ended in November 2021, Jennfier changed the locks on the residence and has refused to allow Leslie access to their children.

¶ 4    Leslie asserted two claims: (1) a "petition to adjudicate parentage"; and (2) a "petition for entry of an allocation of parenting time order, appointment of guardian *ad litem*, related matters and other relief." Under both counts, Leslie alleged she had standing pursuant to section 602 of the Illinois Parentage Act of 2015 (Parentage Act or Act) (750 ILCS 46/101 *et seq.*) and under the common law. Specifically, Leslie alleged that she had standing under the Act because she was a woman "alleging herself to be the parent of the child" (*id.* § 602(e)), she had "provided financial support to the child" (*id.* § 602(g)), and she was "an intended parent" (*id.* § 602(k)). In addition, Leslie alleged that she had standing under the common law as a person with rights pursuant to the common law causes of action of breach of oral contract and promissory estoppel.

¶ 5    Leslie further alleged that she and Jennifer had been in a "long-term romantic, intimate relationship" starting in 2007. They moved in together in 2013, and Leslie "contributed to mortgage payments, living and related expenses," and she and Jennifer "discussed their desire and plans to have children." Each wanted to be a biological parent and they agreed "that they would

each adopt the other's biological child to assure there would be no issues with hospital/medical access for the non-birth parent and that there would be no issues in the event something happened to either one of them." They agreed that Jennifer would try to conceive first because she was approximately five years older than Leslie.

¶ 6 Their first child, D.F., was born in 2016. When Leslie suggested initiating adoption proceedings, however, Jennifer said "she wanted to wait until [Leslie] delivered their second child and then have adoptions for both children at the same time." Adoption required the consent of both parties, and Leslie said she "had no reason not to trust [Jennifer] and relied on her to make good on her promise after their next child was to be born."

¶ 7 When the two women decided that it was time to have their second child, Jennifer said she again wanted to bear the child, citing her age, and Leslie "conceded, based on her trust in [Jennifer]," believing "that she would have a vital, equal parenting role." Jennifer thus also carried their second child, J.F., who was born in 2018. Leslie alleged that Jennifer then "again reneged on her promise to participate with [Leslie] in adoption proceedings for both children."

¶ 8 Leslie alleged in detail her involvement in the entire process of having the children. Leslie took on the primary role in selecting the donor and both she and Jennifer shared the cost of "purchasing sufficient vials of donor gametes to have enough for future children." Leslie attended fertility appointments, OB/GYN appointments, and parenting classes, together with Jennifer. They shopped for nursery furniture and baby clothes together. Leslie and Jennifer attended a baby shower at Leslie's parents' home in Michigan, along with Jennifer's mother and one of her sisters, where they were "introduced as partners and parents" and opened gifts together. They sent out thank you cards together.

¶ 9 Leslie alleged that she was in the room for the entire labor and delivery of both of their

children. Leslie said she and Jennifer shared in the joys, responsibilities, and financial expenses of parenting both D.F. and J.F. They both "bonded with their children through loving, hugging, feeding, playing, dressing, reading, changing diapers, tending to minor illnesses, and engaging in all the other activities that are part of being a parent." Both D.F. and J.F. called Leslie "Mommy."

¶ 10    Leslie split the cost of daycare for both children with Jennifer and participated as a full parent with respect to both children's daycare experiences. When Leslie and Jennifer moved with their children to a new home in 2019, Leslie "continued to contribute to the mortgage payment and other expenses of the family's new residence." Leslie also alleged that D.F. and J.F. knew her parents as grandparents, and that her parents visited them in Northbrook to "enjoy the company of their grandchildren." Leslie and the children had also visited Leslie's parents "several times at their home in Michigan."

¶ 11    As relief, Leslie requested an order finding that she was a parent of D.F. and J.F. and that she was "entitled to all legal rights, benefits, and responsibilities of a parent." Leslie asked the court to give her reasonable parenting time with both D.F. and J.F., set a temporary parenting time schedule, require the parties to attend mediation, appoint a guardian *ad litem* for the children, and for an award of attorney fees and costs.

¶ 12    On May 2, 2022, Jennifer moved to dismiss Leslie's petition pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)), arguing that Leslie lacked standing to seek the requested relief.

¶ 13    In her response to Jennifer's motion, Leslie primarily argued that Jennifer failed to support her motion with an affidavit, Jennifer's motion "consist[ed] of conclusions and facts not 'admissible in evidence," and that it was Jennifer's burden to prove Leslie lacked standing, not Leslie's burden to establish standing.

¶ 14 Argument was held, after which the circuit court issued a written order on September 1, 2023, granting Jennifer's motion to dismiss. The court noted that this was "a purely legal issue of statutory construction regarding the threshold question of whether Leslie ha[d] standing to bring her Petition." The court found Leslie had failed to allege facts showing she had standing to bring her petition under the Parentage Act or common law standing. The court acknowledged that "when the General Assembly enacted the Parentage Act of 2015, it broadened the statutory avenues to achieve standing to be a parent, and included situations that had previously been omitted." Ultimately, however, the court concluded that the situation Leslie found herself in—"an individual in a dating relationship with someone who ha[d] children"—was not included in the relevant sections of the Parentage Act. The court feared that to hold otherwise would "open the floodgates" to claims by parties who were merely in dating relationships with individuals who were the parents of children seeking court intervention to maintain relationships with those children "absent any legal basis and against the wishes of the parent."

¶ 15 This appeal followed.

¶ 16                                    II. JURISDICTION

¶ 17 The circuit court dismissed Leslie's petition on September 1, 2023, and Leslie timely filed her notice of appeal on September 29, 2023. We have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 18                                    III. ANALYSIS

¶ 19 "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." (Internal quotation marks omitted.) *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 54. Subsection (a)(9) specifically provides for involuntary

dismissal where "the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2022). An "affirmative matter" is "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." (Internal quotation marks omitted.) *Strauss*, 2022 IL 127149, ¶ 54. It must either "be apparent on the face of the complaint or otherwise be supported by affidavits or other evidentiary material." *Id.* In deciding a section 2-619 motion, the court "must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Id.* "Thus, the court accepts as true all well-pleaded facts in the complaint and all inferences that may reasonably be drawn in [the] plaintiffs' favor." *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20. We review a dismissal under section 2-619 *de novo. Id.*

¶ 20     The sole basis for Jennifer's section 2-619 motion was that Leslie lacked standing to bring her petition, under either the Parentage Act or the common law. The purpose of the standing doctrine "is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues" (*In re Estate of Wellman*, 174 Ill. 2d 335, 344 (1996)) and "to preclude persons who have no interest in a controversy from bringing suit" (*Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)). "A standing challenge focuses on the party seeking relief—not on the merits of the controversy—and asks whether that party is entitled to pursue the legal challenge, either in their personal or representative capacity." (Internal quotation marks omitted.) *Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 30.

¶ 21     Initially, we note that Jennifer spends a decent portion of her brief arguing that Leslie has forfeited her arguments because her opening brief fails to comply with Illinois Supreme Court

Rule 341(h)(7) (eff. Oct. 1, 2020), and because she did not raise precisely the same arguments in the circuit court. We disagree, however, that Leslie has forfeited anything on appeal.

¶ 22 Rule 341(h)(7) requires that the argument section of an appellate brief "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." *Id.* The argument section of Leslie's brief complies with those requirements—she claims that she has standing under the Parentage Act and common law, she cites the sections of the Parentage Act under which she claims to have standing, she points out the facts alleged in her petition that support her claim for standing, and she cites caselaw that she argues supports her common law standing claim. Leslie's brief complies with Rule 341(h)(7).

¶ 23 As to whether Leslie forfeited her arguments by failing to make them in the circuit court, our supreme court has made clear that a party may forfeit a claim, but not arguments in support of a claim. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Here, Leslie raised her claim that she has standing before the circuit court and maintains it now on appeal. In her petition, she specifically alleged standing under subsections (e), (g), and (k) of section 602 the Parentage Act, as well as common law standing. Any arguments she makes in support of that claim are not forfeited, even if they were not made before the circuit court. Accordingly, Leslie has not forfeited her standing claim.

¶ 24 The question of whether Leslie has standing pursuant to the Parentage Act is one of statutory construction. "The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Hart v. Illinois State Police*, 2023 IL 128275, ¶ 17. The best indication of the legislature's intent is the language of the statute, which "should be given its plain and ordinary meaning." *Id.*

¶ 25 Article 6 of the Parentage Act is titled "Proceeding to Adjudicate Parentage" and

specifically authorizes civil proceedings "to adjudicate the parentage of a child." 750 ILCS 46/601 (West 2022). Section 602, titled "Standing," first states that "[a] complaint to adjudicate parentage shall be verified, shall be designated a petition, and shall name the person or persons alleged to be the parent of the child." *Id.* § 602. It then provides that "a proceeding to adjudicate parentage may be maintained by," in relevant part:

> "(e) a woman presumed or alleging herself to be the parent of the child;
>
> \*\*\*
>
> (g) any person or public agency that has physical possession of or has custody of or has been allocated parental responsibilities for, is providing financial support to, or has provided financial support to the child; [or]
>
> \* \* \*
>
> (k) an intended parent." *Id.* § 602(e), (g), (k).

¶ 26    It is clear to us, reading Leslie's allegations in the light most favorable to her as the non-moving party, that Leslie has standing under several subsections of section 602. Section 602 is broad, granting standing to numerous parties who might not otherwise have it, such as "the support-enforcement agency or other governmental agency authorized by other law." *Id.* § 602(f).

¶ 27    Specifically relevant to this case, the Parentage Act recognizes standing for "a woman who is presumed to be *or alleging herself to be* the parent of the child." (Emphasis added.) *Id.* § 602(e). Leslie, through filing a petition seeking an adjudication that she is the parent of D.F. and J.F., has alleged herself to be the parent of D.F. and J.F. The language of the statute makes clear that this is sufficient to give her standing.

¶ 28    The circuit court recognized that subsection (e) gives standing to a woman alleging herself to be a parent but found, with no explanation or citation of authority, that this subsection must be

read "in light of the provisions of Section 204" of the Act and that "nothing in Leslie's Petition [brought] her matter within the scope of [that] provision." We disagree.

¶ 29    Section 204 of the Act lists the circumstances under which a person is *presumed* to be a parent. *Id.* § 204. However, section 602(e) grants standing more broadly to "a woman presumed *or alleging herself to be* the parent of the child." (Emphasis added.) *Id.* § 602(e). As our supreme has observed, "[t]he word 'or' is disjunctive" and "[a]s used in its ordinary sense, *** marks an alternative indicating the various parts of the sentence which it connects are to be taken separately." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 145 (2006). Indeed, the Act itself contemplates that a presumed parent may be a different person than an alleged parent. See 750 ILCS 46/605(a)(1) (West 2022) ("In any action brought under *** Article 6 of this Act where *** *the individual alleged to be the parent in a petition is different from an individual who is presumed to be the parent of the child* under Article 2 of this Act, a notice shall be served on the presumed parent ***" (emphasis added)). Leslie asserts that she has standing as a person "alleging herself to be the parent of the child" and the alternative provision of section 602(e) giving standing to a "presumed" parent under section 204 is simply irrelevant.

¶ 30    Jennifer also argues that Leslie's allegations that she is a parent should be disregarded as conclusory. According to Jennifer, "Leslie declares that she is a 'parent' within the meaning of the 2015 Act without showing that she has a 'parent-child' relationship under § 201 as required by the definition." We are not sure that any more detail is required to give Leslie standing but, in any event, Leslie did not simply state that she was a parent without any supporting allegations: All of Leslie's allegations in support of her petition—her involvement in selecting a donor, the artificial insemination process, the pregnancy, and the raising of the children—support her allegation that she is a parent.

¶ 31 In short, Leslie has standing under subsection (e) as someone alleging herself to be the parent of D.F. and J. F. This is a classic example of a party with "a real interest in the outcome of the controversy" (*Carr v. Koch*, 2012 IL 113414, ¶ 28) who "is entitled to pursue the legal challenge" (*Mareskas-Palcek*, 2017 IL App (1st) 162746, ¶ 30).

¶ 32 Leslie has also alleged sufficient facts to show that she fits under the narrower standing provisions of sections 602(g) and 602(k).

¶ 33 Section 602(g) grants standing to a person who "has physical possession of or has custody of or has been allocated parental responsibilities for, is providing financial support to, or *has provided financial support to the child.*" (Emphasis added.) 750 ILCS 46/602(g) (West 2022). Leslie has alleged throughout the petition numerous ways in which she provided financial support to D.F. and J.F., including splitting the cost of daycare for both children with Jennifer.

¶ 34 This ground was found inapplicable by the circuit court because Leslie "fail[ed] to allege any court order or other legal document that requires her to provide the children with financial support." But nothing in section 602(g) requires that the person who provided financial support did so pursuant to a court order, and "[a] court may not read into a statute any limitations or conditions which are not expressed in the plain language of the statute." *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23.

¶ 35 Jennifer argues that Leslie's claim lacks merit because "financial 'support' is a duty that is defined and ordered by a court *** and does not equate with the simple payment of certain expenses." Jennifer points to article 8 of the Act, section 801(a) of which references the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2022)). That section, titled "Child support orders," provides that "[i]n determining the amount of [a] child support award, the court shall use the guidelines and standards set forth in Sections 505 and 505.2

of the [Marriage Act]." 750 ILCS 46/801(a) (West 2022). It appears that Jennifer is arguing that "support" is a term of art that Leslie has misconstrued, but Jennifer ignores the fact that section 801 of the Parentage Act and sections 505 and 505.2 of the Marriage Act refer to "child support"—not to "financial support." *Id.*; 750 ILCS 5/505, 505.2 (West 2022). If the legislature had intended to grant standing under section 602(g) of the Parentage Act only to a person who had paid court-ordered *child* support, it certainly could have used that term. Instead, the legislature used the more generic "financial support." We are thus unpersuaded by Jennifer's argument on this point. Leslie also had standing based on section 602(g).

¶ 36    Finally, we find that Leslie has alleged sufficient facts to show she has standing under section 602(k) as an "intended parent." 750 ILCS 46/602(k) (West 2022). The Act defines an "intended parent" as "a person who enters into an assisted reproductive technology arrangement *** under which he or she will be the legal parent of the resulting child." 750 ILCS 46/103(m-5). The term "arrangement" means "[a] measure taken or plan made in advance of some occurrence, sometimes for a legal purpose; an agreement or settlement of details made in anticipation." Black's Law Dictionary (11th ed. 2019).

¶ 37    Leslie alleged in her petition that she and Jennifer discussed their plans to have children, that each wanted to be a biological parent, that they jointly agreed that Jennifer would have their first child while Leslie would have their second, and that "they would each adopt the other's biological child." This certainly seems like a plan made in advance of some occurrence, and under this plan—as modified when it was decided that Jennifer would also carry their second child—Leslie was supposed to adopt her non-biological child, which would have made her the legal parent of that child (see 750 ILCS 46/201(a)(3) (West 2022) (a parent-child relationship is established by "adoption of the child by the woman")). That Jennifer then refused to allow Leslie to adopt either

D.F. or J.F. does not change Leslie's allegations that they had an arrangement under which she would have become the legal parent of her non-biological children.

¶ 38    Because Leslie has alleged sufficient facts to show she has standing under the Parentage Act, the circuit court's grant of Jennifer's motion to dismiss was in error. Accordingly, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 39    We note that this case addresses standing, not the merits of Leslie's petition. Those remain to be determined in the first instance by the circuit court. This case was considered and resolved by this court on an expedited basis under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), because it involves allocation of parental responsibilities. Time is of the essence for these young children who have already grown two years older since Leslie filed this petition. We urge the circuit court and the parties to move expeditiously to resolve the merits of this case.

¶ 40    In order to expedite this resolution, this court has by separate order, on its own motion, shortened the time to file any petition for rehearing to 10 days and has directed that the mandate shall issue immediately thereafter if no petition is filed.

¶ 41                                    IV. CONCLUSION

¶ 42    For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 43    Reversed and remanded.

***In re D.F.*, 2024 IL App (1st) 231784**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-D-079326, the Hon. Patrick Powers, Judge, presiding. |
| **Attorneys for Appellant:** | Leslie Ward, of Northbrook, appellant *pro se*. |
| **Attorneys for Appellee:** | Schiller Du Canto & Fleck LLP, of Chicago (Michele M. Jochner and Anita M. Ventrelli, of counsel). |